MARGARET BUTTMAN et al., Appellees, v. MARIA CHRISTY et al., Appellants.

PLEADING: Amendments—After Reversal and Remand. Issue-changing amendments may be allowed, in law actions, after a reversal and remand. •

PLEADING: Amendments—Leave of Court. The fact that an amendment was filed without leave of court is not, of itself, a ground for striking the amendment.

JUDGMENT: Conclusiveness—Statement of Fact in Instruction. A statement by the trial court in its instruction to the jury, to the effect that "the contestants admit that the purported will was duly executed," does not constitute an adjudication preventing a recasting of the issues on retrial after reversal.

TRIAL: Reception of Evidence—Support For Untenable Theory. Evidence on an untenable theory is properly rejected.

EVIDENCE: Opinion Evidence—Handwriting—Proved Signatures as Standards. The fact that proved signatures admitted as standards were made some seventeen years prior to the execution of the instrument in question, furnishes no reason for their rejection as evidence.

EVIDENCE: Opinion Evidence—Handwriting—Enlarged Photographic Copies. An enlarged photographic copy of a signature made from a lost receipt is receivable in evidence, said copy being properly identified by a person who witnessed the signing of the receipt.

WITNESSES: Interest and Bias—Compensation of Expert. An expert witness employed to give an opinion as to handwriting may be asked as to what his charges are; and reversible error results from exclud-

ing such question, when the testimony of such expert is the only testimony impeaching the genuineness of the signature in question.

**EVIDENCE:** **Weight and Sufficiency—Expert Testimony.** The positive, 8 unimpeached testimony of an executor and of two subscribing witnesses to a will, that they saw testatrix sign the will in question, will not be overthrown by the opinion of one expert, unsupported by any extraneous fact or circumstance, to the effect that the signature was not genuine.

*Appeal from Mills District Court.*—TOM E. WHITMORE, Judge.

APRIL 1, 1924.

PROCEEDING for the probate of the purported will of Retta C. Angell. There was a verdict for the contestants. From an order denying probate, the proponents appeal.—*Reversed.*

*W. S. Lewis* and *D. E. Whitfield,* for appellants.

*Genung & Genung* and *Cook, Cook & Cook,* for appellees.

VERMILION, J.—This is the second appeal in this case. Upon the first, it was held that there was no evidence to support a verdict that the will in question was procured by undue influence.

1. PLEADING: amendments: after reversal and remand.

194 Iowa 262. Among other objections originally made to the probate of the will was the following:

"Said purported last will and testament is not the last will and testament of the said Retta C. Angell, deceased."

Upon the first trial, the court instructed the jury that it was admitted by the contestants that the proposed will was executed by Retta C. Angell in manner and form required by law. After the reversal on the former appeal, the contestants filed an amendment to their objections, and objected to the probate of the will "for the reason that the said Retta C. Angell, deceased, never signed said last will and testament, and that the signature attached thereto, purporting to be that of Retta C. Angell, was not attached to said instrument by the said Retta C. Angell, and that the same is not her signature."

Proponents filed a motion to strike this amendment, (1) be-

cause filed without leave of court, (2) because filed too late, and after the cause had been tried and decided by the Supreme Court upon the issues made, and (3) because it was not an amendment, but set up a new cause of action or new ground of objection. This motion was overruled. Complaint of this ruling was made in a motion for a new trial, and is assigned. as error in this court.

Two propositions are urged. It is said that, after a trial and reversal, the issues may not be changed on a retrial. In this proposition is involved the further question whether the amendment was a mere amplification of a ground of objection already made, or the presenting of an entirely new issue or ground of objection. It is further urged that the objections originally made raised the question of the execution of the will, and that there was an adjudication of it upon the first trial, by virtue of the court's instructions.

The two contentions are obviously more or less inconsistent. If the question was raised by the original objections, the amendment did not present a new ground of objection. On the other hand, if it did present an entirely new ground of objection, it was because the question was not presented by the original objections, in which case there was no adjudication. However, both propositions will be considered.

This proceeding is triable as an action at law, and is heard here only upon error assigned, and not *de novo*. *Ross v. McQuiston,* 45 Iowa 145; *Sisters of Visitation v. Glass,* 45 Iowa 154; *In re Will of Norman,* 72 Iowa 84; *In re Will of Bever,* 93 Iowa 576. An examination of the cases reveals the fact that the practice of amending the petition or answer in a law action after a reversal, has been one commonly followed and accepted without question, frequently expressly approved, and in only two instances, so far as we have been able to discover, disapproved.

The effect of the reversal of a law action for errors of the trial court is a very different thing from the reversal of an action in equity that is triable *de novo* in this court, and where a final judgment is rendered here or in the lower court under direction. It has been often held that, speaking generally, the reversal of a law action sends it back to the court below for a retrial, and does not authorize a judgment for the successful appellant.

*Owens v. Norwood-White Coal Co.*, 181 Iowa 948; *Landis v. Interurban R. Company*, 173 Iowa 466; *Bruce v. Galvin*, 183 Iowa 145; *Sanders v. Sutlive Bros.*, 175 Iowa 582.

In numerous cases, after reversal, an amendment to the petition has been filed after the expiration of the statutory period within which an action must have been brought. In this class of cases, the question was whether the amendment presented a new cause of action, and was, therefore, barred. They are illustrative, however, of what we believe to be a common and generally accepted practice. Among the cases of this character the following are cited: *Kuhns v. Wisconsin, I. & N. R. Co.*, 76 Iowa 67; *Thayer v. Smoky Hollow Coal Co.*, 129 Iowa 550; *Plantz v. Kreutzer & Wasem*, 192 Iowa 333. See, also, *Williamson v. Chicago, R. I. & P. R. Co.*, 84 Iowa 583, *Zimmerman v. Robinson & Co.*, 128 Iowa 72.

In *Bebb v. Preston*, 3 Iowa 325, which was a garnishment proceeding, an amended reply to the answer of the garnishee, filed after a reversal, was stricken. It was said:

"The statute expressly provides that the court may allow material amendments *at any stage* of the proceedings, upon such terms and subject to such rules as it may prescribe. The court cannot deny the right to amend, but it may impose a penalty. The judgment having been reversed, the case stood as though there had been no trial—as in fact there was none. It was competent, then, for the plaintiff to amend his pleadings, and it was error in the court to deny him that right."

In the case of *Gray v. Regan*, 37 Iowa 688, an action at law, judgment had been rendered on the report of a referee. This judgment was reversed on appeal. Upon remand, an amended answer was filed, denying, for the first time, certain allegations of the petition. This court said that the defendant's right to file an amended answer could not be doubted, under the circumstances of the case, after the redocketing in the district court.

*Scott v. County of Chickasaw*, 53 Iowa 47, was an action to recover taxes. Upon the first trial, it was held that the land was subject to taxation, and a recovery was denied. On appeal, the judgment was reversed and the cause remanded for a new trial. Thereafter, by an amendment, the defendant pleaded

defenses existing but not set up on the first trial. It was urged, on the second appeal, in attack on the ruling of the lower court refusing to strike the amendment, that the case was tried *de novo* in this court. It was held that this was not the case, and that, after the cause was again in the district court, amendments to the pleadings were allowable, in the furtherance of justice.

The statutes at the time these cases were decided were not, as respects the question under consideration, materially different from Section 3600 of the Code. Section 1759, Code of 1851; Section 2977, Revision of 1860.

In the case of *Hanson v. Cline,* 142 Iowa 187, an action for damages, the plaintiff, after the reversal of a judgment in his favor, amended his petition. A motion to strike the amendment on the ground that it changed the issues was sustained. On a second appeal, this was held to be error.

The case of *In re Estate of Oldfield,* 175 Iowa 118, was a claim against an estate for damages. After the reversal of a judgment in plaintiff's favor, the defendant amended the answer, setting up a new defense. On the second appeal, the plaintiff, cross-appellant, urged that:

"After a case has been tried to a jury upon certain issues and appealed, after reversal neither party has, as a matter of right, to so amend the pleadings as to raise new issues."

This contention the court met by saying:

"As a matter of right, perhaps no. As a matter of discretion in the court, yes. The amendment complained of was filed with the consent of the court, and for reasons then urged before the court. It was a discretionary matter with the court to allow it or not in this particular case."

*In re Estate of Cook,* 143 Iowa 733, arose on objections to an executor's report, and involved the distribution of the estate, consisting wholly of damages received for the death of the deceased. On the first trial, the question presented was as to the distribution of the estate so derived, under the laws of this state. After a reversal, by amendment it was alleged that the death of decedent occurred in Nebraska, and distribution of the damages received therefor was asked in accordance with the laws of that state. It was held, Justice Evans dissenting, that a motion to strike the amendment should have been sustained. This case

is, perhaps, distinguishable from those cited above, but, if not, it is not in accord with the doctrine they announce.

In *Wapello St. Sav. Bank v. Colton,* 143 Iowa 359, the plaintiff appealed from an order striking part of the petition, and procured an order staying proceedings in the district court, pending the appeal on an application representing that, if the ruling was affirmed, no trial would be necessary. After an affirmance, plaintiff was not permitted to amend, asking reformation of certain of its records upon which the former ruling and affirmance had been based. It was held that plaintiff had waived the right to amend, and that there was no abuse of discretion in striking the amendment; but it was said that, had the motion to strike been overruled and that order reversed, the situation would have been entirely different, and plaintiff, on remand, might very properly have elected to amend.

Upon the reversal of a law action, save in cases where, being of the opinion that under no conceivable state of the proof can the party whose judgment is reversed be entitled to recover, this court orders judgment against him, the case goes back for retrial, governed, of course, by the law as determined on the appeal. The matter of amendment after reversal is controlled, as before, by the statute (Code Section 3600), which provides that the court may, on motion of either party at any time, in furtherance of justice and on such terms as may be proper, permit such party to amend any pleading or proceedings by inserting other allegations material to the case. That cases might arise where, by reason of peculiar circumstances, an amendment ought not to be permitted, may be conceded. The case of *Wapello St. Sav. Bank v. Colton,* supra, presented such a situation. But in the case at bar there are no facts to take it out of the operation of the general rule.

It is apparent from the foregoing cases that the fact that, by the amendment, the issues are changed, as first contended by proponents, presents no insuperable obstacle. Indeed, if the issues were not changed, there would be no occasion for the amendment. That the amendment set up facts material to the case and germane to the cause of action—the claim that the will should not be admitted to probate—is clear.

Nor does the fact that leave of court was not first obtained

require that the amendment should be stricken, if the court would, had it been requested, have granted leave to file it. This

2. PLEADING: amendments: leave of court.

may be determined on the motion to strike. *Miller v. Perry*, 38 Iowa 301; *Hanson v. Cline*, supra; *Carlisle v. Sells-Floto Shows Co.*, 180 Iowa 549. There was no error in refusing to strike the amendment.

The statement of the court on the former trial in the instructions to the jury that the contestants admitted that the purported will was duly executed was not an adjudication.

3. JUDGMENT: conclusiveness: statement of fact in instruction.

Cases involving an adjudication in a former proceeding prosecuted to final judgment are not in point. In *Hollenbeck v. City of Marshalltown*, 62 Iowa 21, the jury found, by a special finding, adversely to plaintiff on a fact essential to his right to recover. The verdict in plaintiff's favor was set aside. On appeal from a judgment on a subsequent verdict for plaintiff, it was held that the special finding was not an adjudication in defendant's favor; that the setting aside of the verdict gave a new trial to both parties upon all the issues in the case, the same as if no trial had ever been had. The same thing is true of a reversal on appeal, except as to the questions decided on the appeal.

There is no element of estoppel. The contestants had made no admission of the due execution of the will. The instruction in question, being favorable to the proponents, is not to be construed as such an admission. 22 Corpus Juris 344; *National Warehouse & Stor. Co. v. Toomey*, 181 Mo. App. 64 (163 S. W. 558).

Complaint is made of the refusal of the court to admit in evidence the pleadings and the instructions of the court on the former trial. These were offered on the theory of an estoppel.

4. TRIAL: reception of evidence: support for untenable theory.

There was no error in the ruling. *National Warehouse & Stor. Co. v. Toomey*, supra. The only issue submitted to the jury was the question of the genuineness of the signature of Retta C. Angell to the will. Upon the issue, the only evidence offered was the testimony of the subscribing witnesses and the executor, who testified that the will was signed by the testatrix in their

presence, and the testimony of an expert on handwriting, who testified that, by comparison with three proved signatures, it was not her signature, and two proved signatures and a photographic copy of a third, offered for the purpose of comparison by the jury.

The purported will was dated December 13, 1919. The two signatures admitted as standards, and so used by the expert witness, were made in 1902. They were admitted over the objections that there was no proof of their genuineness, and that they were made at a time too remote. Neither objection was well taken. The fact that they were made at a time remote from the questioned signature affected their value as standards of comparison and the weight of the testimony respecting a comparison made with them, but not their admissibility. *Singer Mfg. Co. v. McFarland,* 53 Iowa 540. See, also, *Johnson v. Bee,* 84 W. Va. 532 (100 S. E. 486, 7 A. L. R. 252).

5. EVIDENCE: opinion evidence: handwriting: proved signatures as standards.

What was shown to be an enlarged photographic copy of the signature of the testatrix was admitted over objection. It was shown that the testatrix signed a receipt; that this receipt came into the hands of the witness, who made the photograph therefrom, and was lost. The photographic copy was, by the witness who saw the original signed, identified as a copy of the original document, by means of a portion of the other writing appearing on the photograph. The only testimony that the original might not have been lost was stricken from the record on motion of appellee. There was no error in receiving the copy or permitting its use as a standard. *United States v. Ortiz,* 176 U. S. 422 (44 L. Ed. 529).

6. EVIDENCE: opinion evidence: handwriting: enlarged photographic copies.

Objections were made to the testimony of the expert on handwriting. Such testimony is expressly authorized by statute (Code Section 4620); nor did the particular questions transgress the rules of evidence.

The expert witness, a resident of Chicago, testified that his business was the examination of disputed documents for the purpose of giving testimony. He was asked on cross-examina-

7. WITNESSES: interest and bias: compensation of expert.

tion what his charges were in such circumstances, and, on objection, was not allowed to answer. The question was proper. It should require no citation of authorities to establish the proposition that it is always permissible to show, on cross-examination, the interest of the witness. Any other rule would operate to deprive courts and juries of one of the most valuable aids in determining the credibility of a witness. It is but trite to say that men's statements, as well as their acts, are often prompted by self-interest. This is but human nature. It is not meant to imply that all men are corrupted by selfish motives. The influence is an insidious one, often not appreciated by the individual himself, but not, for that reason, the less potent. It is not to be assumed that men of any class, calling, or station are incapable of being influenced, especially in their opinions, by considerations of interest. Certainly it cannot be so assumed as to one whose employment is for the very purpose of obtaining an opinion to be used in furthering the interest of his employer. Such testimony is universally held to be of the lowest order and most unsatisfactory character, and we have been referred to no authority holding that a witness who gives it may not be subjected to usual and customary tests for determining his credibility and the value of his opinion.

We would not be understood as saying that the refusal to permit cross-examination on such a subject would, in all cases, be an error that would require a reversal. In this case, however, the situation is unusual. As we have said, the only testimony tending in any way to contradict the three witnesses who said they saw Mrs. Angell sign the will was that of this witness, who was employed to examine the signature with a view to testifying on the subject, and who, merely upon examination and comparison, testified that it was not genuine. While the standards were in evidence, and the jurors might make the comparison for themselves, it cannot be assumed that their verdict finding the will to be forgery was uninfluenced by the opinion of the only witness who so testified. We are constrained to say that the refusal, under such circumstances, to permit this witness to be examined as to the terms of his employment, as affecting his interest in the case, was prejudicial.

While the only evidence that tends to support the verdict is made competent by statute, yet its value is so slight and its character so unsatisfactory that juries are usually and prop-

8. EVIDENCE: weight and sufficiency: expert testimony.

erly instructed that it ought not to be permitted to outweigh the positive and direct testimony of credible witnesses who testify from personal knowledge. The jury in this case was so instructed, but it appears to us to have entirely disregarded the admonition. There is not a single extraneous fact or circumstance that in any degree tends to corroborate the expert witness in saying that the signature is not genuine. The signature appears on its face to have been the result of a labored effort; but Mrs. Angell was a woman of some 75 years of age, with seriously impaired eyesight, and signed the will, if at all, while standing at a bank counter. In view of our conclusion that the case must be reversed and remanded, we deem it proper to say that, unless upon a retrial additional evidence should be produced, it would be the duty of the court to direct a verdict for proponents.

The judgment is reversed and the case remanded.—*Reversed and remanded.*

EVANS, STEVENS, and DE GRAFF, JJ., concur.